# WARROAD CO-OPERATIVE CREAMERY COMPANY v. FRED J. HOYEZ AND OTHERS.[1]

December 12, 1930.

No. 28,146.

*M. J. Hegland,* for appellant.
*Julius J. Olson* and *Oscar R. Knutson,* for respondents.

[1]Reported in 233 N. W. 824.

74

STONE, J.

Action to determine adverse claims to real estate, wherein, after trial without a jury, the decision was that Marvin Lumber & Cedar Company, a corporation (a substituted defendant) was the owner in fee to the exclusion of plaintiff. The latter appeals from the order denying its motion for amended findings or a new trial.

Plaintiff claims under a state assignment certificate for delinquent taxes. Delinquency of the 1924 tax put the land on the delinquent tax list, and it was offered for sale in May, 1926. There was no bidder, and the state bid in for $107.31. The 1925 tax also went delinquent and has been carried on the records as "subsequent delinquent taxes" to those of 1924. There was default also in payment of the 1926 taxes, and again the land went onto the delinquent tax list and was offered at the sale in May, 1928. Again there was no bidder, and the state bid in for $85.29.

March 29, 1928, under G. S. 1923 (1 Mason, 1927) § 2150, on an affidavit of the county auditor, a writ issued directing the attachment of all rents accruing from the premises or "so much thereof as shall be sufficient to satisfy the amount claimed by" plaintiff. The writ was not limited to the "amount for which such parcel was bid in for the state," as it should have been to comply with the statute. Under the writ the sheriff collected $105 in rents from the property. Instead of applying that collection to the amount for which the state had bid in at the May, 1926, sale, the auditor applied it all upon the 1925 taxes then delinquent.

April 27, 1929, the auditor issued the state assignment certificate (No. 888, plaintiff's exhibit G) under which plaintiff claims. That certificate covered taxes aggregating $166.78, a sum arrived at by including the full amount of the 1924 tax and interest and the 1925 tax and interest, minus the rents collected by the sheriff under the attachment. Simultaneously the auditor issued another state assignment certificate to plaintiff (No. 889, plaintiff's exhibit H) covering the 1926 taxes bid in by the state at the 1928 sale and also the 1927 taxes, the amount covered by this certificate being $189.11. May 11, 1929, the auditor issued a notice of expiration of the period

of redemption upon plaintiff's certificate No. 888. The amount required to redeem was stated to be $166.78, with interest at 12 per cent from April 29, 1929, to the date of redemption. July 16, 1929, plaintiff caused its second assignment certificate, No. 889, to be canceled by the auditor. On the same day plaintiff's first certificate, No. 888, was recorded with the register of deeds.

■ It is elementary that in a statutory proceeding to divest title to real estate there must be strict compliance with the statute. Security Trust Co. v. Heyderstaedt, 64 Minn. 409, 67 N. W. 219. Here there was a substantial and fatal departure from the statute. Under § 2150 the writ of attachment could issue for the purpose only of collecting the amount for which the property had been "bid in for the state." In this proceeding that limitation was ignored, and the amount collected attempted to be applied in payment of subsequent taxes rather than those for which the land had been bid in. The subsequent proceedings have gone on the assumption that the taxes for 1925 were paid in part. They were not, for the auditor was without authority to apply any of the attached rents on the 1925 tax. He was without power to issue plaintiff's assignment certificate No. 888 without the inclusion and payment "of all subsequent delinquent taxes, penalties, costs, and interest." G. S. 1923 (1 Mason, 1927) § 2137. Because he did so without including the whole tax for 1925, all of which for the reasons stated remained unpaid, his act was void. For that reason the decision against plaintiff on the merits was right. Pigott v. O'Halloran, 37 Minn. 415, 35 N. W. 4; Arnold v. County of Cook, 134 Minn. 373, 159 N. W. 825; Doherty v. Real Estate T. I. & T. Co. 85 Minn. 518, 89 N. W. 853. All that plaintiff got by its assignment certificate, No. 888, was the state's lien for the unpaid taxes covered thereby, and that right is confirmed in plaintiff by the decision below.

Section 2150 was amended by L. 1929, p. 317, c. 266, so that the rents collected under a writ of attachment issued pursuant to the section may be applied not only upon the amount for which the land was bid in for the state but also to "the amount of all subsequent delinquent taxes." Thereby such an application of attached

rents as was attempted by the auditor in the instant case is now authorized.

■ The decision below allows plaintiff a lien for the taxes, penalties, interest, and costs covered by its first certificate, No. 888, but denies it any lien for those represented by the second certificate, No. 889. The ruling upon the latter was put upon the ground that the taxes for the years covered by the certificate "having been voluntarily paid" by its surrender of the certificate for cancelation, "plaintiff has no further right to recover the same and has by its own voluntary act waived any right it had to have the same included as part of its lien." We cannot agree to that. Under G. S. 1923 (1 Mason, 1927) § 2188, the holder of a tax certificate, unsuccessful in an action to quiet title thereunder, is yet secure in his right to a lien upon the premises and a sale of the land to satisfy that lien, "for all taxes, interest, penalties, and costs embraced in such certificate, and of all subsequent taxes, penalties, interest, and costs paid by him or his assignors, with interest thereon at the rate of twelve per cent. per annum from the date of such certificate or payment." Plaintiff's surrender of its second certificate was made in reliance upon the supposed title acquired under the first, and we find nothing to justify the conclusion of a waiver of the statutory lien, in the event that its title could not be perfected thereunder.

Our decisions are characterized by extreme care to protect the title of the landowner against forfeiture in tax proceedings. Certainly a solicitude of similar justice should protect the money of another who has paid the taxes as authorized by statute. Forfeiture of money paid to the state on the invitation and assurance of its own law would be even more abhorrent to justice than forfeiture of the land for failure to pay the taxes exacted by the same law. It is but the plainest equity, when a landowner procures a decree quieting his title as against the holder of tax certificates, to require him to do equity by reimbursing such holder for the outlay evidenced by the certificates or suffer his land to become subject to a lien therefor. Moreover, that is the plain requirement of the statute. The lien reserved is to protect for *all* the delinquent taxes paid,

with interest, penalties, and costs. The one condition is payment. That condition plaintiff fulfilled. So its counsel well argues that its lien is not "by virtue of any instrument that it holds, canceled or uncanceled," but by virtue of its payment of the subsequent delinquent taxes in question. Foster v. Clifford, 110 Minn. 79, 124 N. W. 632; Culligan v. Cosmopolitan Co. 126 Minn. 218, 148 N. W. 273.

It follows that the case must be remanded with directions to modify the decision below so as to extend plaintiff's lien in accordance with the views here expressed.

So ordered.